IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

TERRITORY OF AMERICAN SAMOA,   )        CIVIL 16-00095 LEK
                               )
          Plaintiff,           )
                               )
     vs.                       )
                               )
NATIONAL MARINE FISHERIES      )
SERVICE; UNITED STATES         )
DEPARTMENT OF COMMERCE;        )
NATIONAL OCEANIC AND           )
ATMOSPHERIC ADMINISTRATION;    )
PENNY PRITZKER, Secretary of   )
Commerce; KITTY SIMONDS,       )
Executive Director of Western  )
Pacific Regional Fishery       )
Management Council; EILEEN     )
SOBECK, Assistant              )
Administrator for Fisheries,   )
MICHAEL D. TOSATTO, Regional   )
Administrator for NOAA's       )
National Marine Fisheries      )
Service Pacific Islands        )
Regional Office,               )
                               )
          Defendants.          )
_____)


**ORDER GRANTING IN PART AND DENYING IN PART**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND**
**DENYING DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT**

         On July 25, 2016, Plaintiff Territory of American Samoa

("Plaintiff") filed its Motion for Summary Judgment ("Motion").

[Dkt. no. 23.]  On October 24, 2016, Defendants National Marine

Fisheries Service ("NMFS"); United States Department of Commerce

("DOC"); National Oceanic and Atmospheric Administration

("NOAA"); Penny Pritzker, in her official capacity as the

Secretary of Commerce; Kitty Simonds, in her official capacity as

Executive Director of the Western Pacific Regional Fishery
Management Council ("the Council"); Eileen Sobeck, in her
official capacity as Assistant Administrator for Fisheries, NMFS;
and Michael D. Tosatto, in his official capacity as Regional
Administrator, NMFS Pacific Islands Regional Office (all
collectively, "Defendants") filed their combined memorandum in
opposition to the Motion and Counter-Motion for Summary Judgment
("Counter-Motion"). [Dkt. no. 28.] Plaintiff filed its combined
reply in support of the Motion and memorandum in opposition to
the Counter-Motion ("Plaintiff's Reply") on December 8, 2016, and
Defendants filed their reply in support of the Counter-Motion
("Defendants' Reply") on January 19, 2017. [Dkt. nos. 35, 39.]

These matters came on for hearing on February 13, 2017.
After careful consideration of the motions, supporting and
opposing memoranda, the arguments of counsel, and the relevant
legal authority, Plaintiff's Motion is HEREBY GRANTED IN PART AND
DENIED IN PART and Defendants' Counter-Motion is HEREBY DENIED
for the reasons set forth below. Specifically, this Court GRANTS
Plaintiff's Motion as to Count I and CONCLUDES that the rule at
issue in this case is invalid. In light of the ruling on
Count I, this Court DISMISSES Plaintiff's remaining claims as
moot.

## BACKGROUND

Plaintiff filed its Complaint on March 4, 2016, pursuant to, *inter alia*, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06, and the Magnuson-Stevens Fishery Conservation and Management Act ("MSA"), 16 U.S.C. § 1855(f). [Complaint at ¶ 7.] Plaintiff seeks an order setting aside NMFS, NOAA, and DOC's Final rule regarding Pacific Island Pelagic Fisheries; Exemption for Large U.S. Longline Vessels to Fish in Portions of the American Samoa Large Vessel Prohibited Area, 81 Fed. Reg. 5619 (Feb. 3, 2016). The rule reduces the size of the Large Vessel Prohibited Area in American Samoa ("LVPA" and "2016 LVPA Rule"). Plaintiff argues that the rule violates the deeds of cession of American Samoa, which constitutes a violation of the MSA. [Complaint at ¶ 6.] Plaintiff alleges that:

> In promulgating this rule, NMFS acted arbitrarily by asserting a rationale to support the new rule that is contrary to the evidence in the record. NMFS also abused its discretion by failing to review, address, or consider the Deeds of Cession as required under the MSA and the Administrative Procedure Act ("APA").

[Id.]

Plaintiff asserts the following claims: violation of the MSA by failing to ensure that the rules promulgated are consistent with the deeds of cession ("Count I"); [id. at ¶¶ 49-56;] breach of fiduciary duty, in violation of APA, § 706(2)(a) ("Count II"); [id. at ¶¶ 57-61;] failure by NMFS to conduct

adequate review of the deeds of cession before promulgating the 2016 LVPA Rule and failure by the Council to provide training on the deeds of cession, both in violation of the MSA, 16 U.S.C. § 1854, and APA § 706(2)(a) ("Count III"); [id. at ¶¶ 62-68;] and arbitrary and capricious action, in violation of APA § 706(2)(a) ("Count IV") [id. at ¶¶ 69-71].

Plaintiff seeks the following relief: 1) an order vacating and setting aside the 2016 LVPA Rule; 2) a declaratory judgment that a) the rule violates the MSA and APA because it is inconsistent with the deeds of cession, b) the rule is a breach of the United States' fiduciary duty to the people of American Samoa, c) NMFS violated the MSA and the APA by failing to review and address the deeds of cession, and d) NMFS acted arbitrarily and capriciously because it relied on a rationale that was contrary to the evidence before it; 3) any appropriate injunctive relief; 4) reasonable attorneys' fees and costs; and 5) any other appropriate relief.  [Id. at pgs. 20-21.]

Defendants filed their answer to the Amended Complaint on April 28, 2016.  [Dkt. no. 18.]

## I.   Legal and Historical Background

### A.   MSA

The Ninth Circuit has stated:

> The Magnuson-Stevens Fishery Conservation and Management Act ("MSA"), 16 U.S.C. §§ 1801–1884, "was enacted to establish a federal-regional partnership to manage fishery resources."  Nat'l

4

Res. Def. Council, Inc. v. Daley, 209 F.3d 747,
749 (D.C. Cir. 2000).  Under the MSA, the federal
government exercises "sovereign rights and
exclusive fishery management authority over all
fish, and all Continental Shelf fishery resources,
within the exclusive economic zone" ("EEZ"), 16
U.S.C. § 1811(a), which extends from the seaward
boundary of each coastal state[1] to 200 miles
offshore, id. § 1802(11); City of Charleston v. A
Fisherman's Best, Inc., 310 F.3d 155, 160 (4th
Cir. 2002).  The MSA expressly preserves the
jurisdiction of the states over fishery management
within their boundaries.  See 16 U.S.C.
§ 1856(a)(1).

To manage fishing in the EEZ, the MSA calls
for the creation of regional Fishery Management
Councils ("FMCs"), composed of state and federal
officials and experts appointed by the Secretary
of the National Marine Fisheries Service ("NMFS").
16 U.S.C. § 1852(b)(1)-(2).  With the cooperation
of "the States, the fishing industry, consumer and
environmental organizations, and other interested
persons," id. § 1801(b)(5), the NMFS and FMCs
develop and promulgate Fishery Management Plans
("FMPs") to "achieve and maintain, on a continuing
basis, the optimum yield from each fishery," id.
§ 1801(b)(4).  In the MSA, "optimum yield" means
the amount of fish that "will provide the greatest
overall benefit to the Nation, particularly with
respect to food production and recreational
opportunities, and taking into account the
protection of marine ecosystems."  Id. § 1802(33);
see also 50 C.F.R. § 600.310(e)(3).

Chinatown Neighborhood Ass'n v. Harris, 794 F.3d 1136, 1139-40

(9th Cir. 2015) (footnotes omitted), cert. denied, 136 S. Ct.

2448 (2016).  The Council is the regional council for Hawai`i,

---

[1] "The term 'State' means each of the several States, the
District of Columbia, the Commonwealth of Puerto Rico, American
Samoa, the Virgin Islands, Guam, and any other Commonwealth,
territory, or possession of the United States."  16 U.S.C.
§ 1802(40).

American Samoa, Guam, and the Commonwealth of the Northern Mariana Islands. 16 U.S.C. § 1852(a)(1)(H). The Council's thirteen voting members include fishery management officials representing those areas, and eight citizens appointed by the Secretary from those areas. [Counter-Motion at 6 n.3 (citing 16 U.S.C. § 1852(a)(1)(H)).]

The FMPs and FMP amendments that the regional councils prepare must be reviewed and approved by NMFS, and must comply with the requirements of 16 U.S.C. § 1853(a) and applicable laws. See 16 U.S.C. § 1854(a)(1)-(3). In addition, regional councils can propose regulations or modifications to regulations that are necessary to implement an FMP or an FMP amendment, and the Secretary can prepare an FMP or an FMP amendment. See §§ 1853(c), 1854(c). Section 1854(c) states, in pertinent part:

> (6) The Secretary may propose regulations in the Federal Register to implement any plan or amendment prepared by the Secretary. In the case of a plan or amendment to which paragraph (4)(A) applies, such regulations shall be submitted to the Council with such plan or amendment. The comment period on proposed regulations shall be 60 days, except that the Secretary may shorten the comment period on minor revisions to existing regulations.
>
> (7) The Secretary shall promulgate final regulations within 30 days after the end of the comment period under paragraph (6). The Secretary must publish in the Federal Register an explanation of any substantive differences between the proposed and final rules. All final regulations must be consistent with the fishery management plan, with the national standards and other provisions of this chapter, and with any

other applicable law.

The ten "national standards for fishery conservation and management" are set forth in 16 U.S.C. § 1851(a).

Regulations promulgated pursuant to the MSA are subject to judicial review under certain provisions of the APA. 16 U.S.C. § 1855(f). Section 1855(f)(1)(B) states that "the appropriate court shall only set aside any such regulation or action on a ground specified in section 706(2)(A), (B), (C), or (D) of" the APA.

## B. Cession

American Samoa is an unincorporated and unorganized United States territory. [Complaint at ¶ 8; Answer at ¶ 8 (admitting those portions of Plaintiff's ¶ 8).] The parties agree that: "At the turn of the 20th Century, the United States Government entered into and executed two separate Deeds of Cession between the United States Government and the leaders of the islands of Tutuila, Aunu`u, Ofu, Olosega, Ta`u and Rose Island." [Complaint at ¶ 16; Answer at ¶ 16.] One is the Tutuila and Aunu`u Deed of Cession, dated April 17, 1900, and the other is the Manu`a Deed of Cession, dated July 14, 1904 (collectively "the Deeds of Cession"). The Deeds of Cession ceded certain lands and surrounding bodies of water to the United States. [Complaint at ¶¶ 17-18; Answer at ¶¶ 17-18 (admitting portions of Plaintiff's ¶¶ 17-18).]

On October 24, 2016, Defendants filed a Motion for

Judicial Notice Pursuant to FRE 201(b)(2) ("RJN"). [Dkt. no.

27.] Defendants ask this Court to take judicial notice of the

contents of the Convention of 1899[2] and the Deeds of Cession,

which they obtained from the American Samoa Bar Association

website. [RJN at 1-2.] On December 5, 2016, Plaintiff filed a

statement of no opposition to the RJN. [Dkt. no. 32.]

The Cession of Tutuila and Aunu`u states, in pertinent

part:

> Now know Ye:
>
> 1. That we, the Chiefs whose names are hereunder
> subscribed by virtue of our office as the
> hereditary representatives of the people of
> said islands, in consideration of the
> premises herein-before recited and for divers
> good considerations us hereunto moving, have
> ceded, transferred, and yielded up unto
> Commander B. F. Tilley of the U.S.
> "Abarenda." the duly accredited
> representative of the Government of the
> United States of America in the islands
> hereinafter mentioned or described for and on
> behalf of the said government. All these the
> islands of Tutuila and Aunuu and all other
> islands, rocks, reefs, foreshores and waters

---

[2] In the Convention of 1899, entered into on December 2,
1899 and ratified on February 16, 1900, Germany and Great Britain
renounced in favor of the United States their "rights and claims
over and in respect to the Island of Tutuila and all other
islands of the Samoan group east of Longitude 171 degrees west of
Greenwich." [RJN, Attachment at 2.] All three documents that
are the subject of the RJN are attached to the RJN as a single
Attachment. Because the Attachment is not consecutively
paginated, the Court will refer to the page numbers assigned to
the Attachment in the district court's electronic case filing
system.

lying between the 13th degree and the 15th
degree of south latitude and between the
171st degree and 167th degree of west
longitude from the meridian of Greenwich,
together with all sovereign rights thereunto
belonging and possessed by us, to hold the
said ceded territory unto the Government of
the United States of America; to erect the
same into a separate District to be annexed
to the said Government, to be known and
designated as the District of "Tutuila".

2.     The Government of the United States of
America shall respect and protect the
individual rights of all people dwelling in
Tutuila to their lands and other property in
said District; but if the said Government
shall require any land or any other thing for
Government uses, the Government may take the
same upon payment of a fair consideration for
the land, or other thing, to those who may be
deprived of their property on account of the
desire of the Government.

[RJN, Attachment at 4.]   The Cession of Manu`a Islands states, in

pertinent part:

Now Know Ye: (1) That we, Elesare Tuimanu`a and
the Chief whose names are hereunder subscribed, in
consideration of the premises hereinbefore
recited, have ceded, and, by, These Presents Do
Cede, unto the Government of the United States of
America, All Those, The Islands of the Manu`a
Group, being the whole of eastern portion of the
Samoan Islands lying east of Longitude 171 degrees
west of Greenwich and known as Tau, Olosega, Ofu,
and Rose Islands, and all other, the waters and
property and adjacent thereto, together with all
sovereign rights thereunto belonging and possessed
by us.

To hold the said ceded territory unto the
Government of the United States of America, to
erect the same into a territory or district of the
said Government.

(2)  It is intended and claimed by these Presents
that there shall be no discrimination in the
suffrages and political privileges between the
present residents of said Islands and citizens of
the United States dwelling therein, and also that
the rights of the Chiefs in each village and of
all people concerning their property according to
their customs shall be recognized.

[Id. at 6.]  Plaintiff asserts that: "The property and surrounding waters described in the Deeds of Cession measure more than 28,000 square miles" ("Ceded Area").  [Complaint at ¶ 21 (citing Complaint, Exh. C (map of Ceded Area)).]

In 1929, Congress enacted 48 U.S.C. § 1661, which states, in pertinent part:

The cessions by certain chiefs of the islands of
Tutuila and Manua and certain other islands of the
Samoan group lying between the thirteenth and
fifteenth degrees of latitude south of the Equator
and between the one hundred and sixty-seventh and
one hundred and seventy-first degrees of longitude
west of Greenwich, herein referred to as the
islands of eastern Samoa, are accepted, ratified,
and confirmed, as of April 10, 1900, and July 16,
1904, respectively.

§ 1661(a).

## C.   2002 LVPA Rule

On January 30, 2002, NMFS, NOAA, and DOC adopted a Final rule regarding Fisheries Off West Coast States and in the Western Pacific; Pelagic Fisheries; Prohibition on Fishing for Pelagic Management Unit Species; Nearshore Area Closures Around American Samoa by Vessels More Than 50 Feet in Length ("2002 LVPA

Rule"). 67 Fed. Reg. 4369.[3] It states:

> NMFS issues this final rule to prohibit certain
> vessels from fishing for Pacific pelagic
> management unit species (PMUS)[4] within nearshore
> areas seaward of 3 nautical miles (nm) to
> approximately 50 nm around the islands of American
> Samoa. This prohibition applies to vessels that
> measure more than 50 ft (15.2 m) in length overall
> and that did not land pelagic management unit
> species in American Samoa under a Federal longline
> general permit prior to November 13, 1997.[5]
> This action is intended to prevent the potential
> for gear conflicts and catch competition between
> large fishing vessels and locally based small
> fishing vessels [("alias")]. Such conflicts and
> competition could lead to reduced opportunities
> for sustained participation by residents of
> American Samoa in the small-scale pelagic fishery.
>
> . . . .

---

[3] The proposed rule was published on July 31, 2001. 66 Fed. Reg. 39475.

[4] "'Western Pacific pelagic management unit species' include different species of tuna, billfish, shark, other pelagic fish, and squid." [Counter-Motion at 10 n.5 (citing 50 C.F.R. § 665.800).]

[5] Defendants state:

> To fish for Western Pacific pelagic management
> unit species "using longline gear in the EEZ
> around American Samoa[,]" "[a] vessel of the
> United States must be registered for use under a
> valid American Samoa longline limited access
> permit." 50 C.F.R. § 665.801(c)(1). These
> limited access permits are issued to the following
> four vessel size classes: Class A vessels (less
> than or equal to forty feet long); Class B vessels
> (over forty feet and up to fifty feet long);
> Class C vessels (over fifty feet and up to seventy
> feet long); and Class D vessels (over seventy feet
> long). Id. § 665.816(c).

[Counter-Motion at 10 n.6 (alterations Defendants').]

> . . . [S]mall vessel fishermen have raised
> concerns over the potential for gear conflicts
> between the small-vessel (less than or equal to 50
> ft (15.2 m) in length overall) fishing fleet and
> large longline fishing vessels greater than 50 ft
> (15.2 m) length overall, hereafter called "large
> vessels," targeting PMUS in the American Samoa
> pelagic fishery, as well as regarding adverse
> impacts on fishery resources resulting from the
> increased numbers of large fishing vessels in the
> fishery.  Due to the limited mobility of the
> smaller vessels, an influx of large domestic
> vessels fishing in the nearshore waters of the
> U.S. exclusive economic zone (EEZ) around American
> Samoa could lead to gear conflicts, catch
> competition, and reduced opportunities for
> sustained fishery participation by the locally
> based small boat operators.  Local fishermen and
> associated fishing communities depend on this
> fishery not only for food, income, and employment,
> but also for the preservation of their Samoan
> culture.

67 Fed. Reg. at 4369.

### D.    2016 LVPA Rule

On August 25, 2015, NMFS published the proposed rule

and a draft environmental assessment for public comment.[6]  80

Fed. Reg. 51527.  "NMFS received comments from over 270

individuals, commercial and recreational fishermen, businesses,

Territorial government offices (including the Governor of

American Samoa and the American Samoa Department of Marine and

Wildlife Resources), Federal agencies, and non-governmental

---

[6] NMFS's Regulatory Amendment, Exemption for Large ($\geq$50 ft)
U.S. Longline Vessels to Fish in Portions of the American Samoa
Large Vessel Prohibited Areas, Including an Environmental
Assessment and Regulatory Impact Review, dated January 8, 2016
("2016 LVPA EA") is Administrative Record ("AR") at A185-91.

12

organizations." 2016 LVPA Rule, 81 Fed. Reg. at 5619.

Ultimately, the 2016 LVPA Rule

> allows large federally permitted U.S. longline
> vessels to fish in certain areas of the Large
> Vessel Prohibited Area (LVPA). NMFS will continue
> to prohibit fishing in the LVPA by large purse
> seine vessels. The fishing requirements for the
> Rose Atoll Marine National Monument remain
> unchanged. The intent of the rule is to improve
> the viability of the American Samoa longline
> fishery and achieve optimum yield from the fishery
> while preventing overfishing, in accordance with
> National Standard 1.
>
> . . . .
>
> **SUPPLEMENTARY INFORMATION:** The American Samoa
> large vessel prohibited area (LVPA) extends
> seaward approximately 30-50 nm around the various
> islands of American Samoa (see 50 CFR 665.806(b)).
> Federal regulations restrict vessels 50 ft and
> longer from fishing for pelagic management unit
> species within the LVPA. The Council and NMFS
> established the LVPA in 2002 to prevent the
> potential for gear conflicts and catch competition
> between large and small fishing vessels. . . .
>
> Since 2002, the American Samoa pelagic
> fisheries have changed such that the conditions
> that led the Council and NMFS to establish the
> LVPA are no longer present. The LVPA may be
> unnecessarily reducing the efficiency of the
> larger American Samoa longline vessels by
> displacing the fleet from a part of their
> historical fishing grounds.
>
> To address the current fishery conditions,
> the Council recommended that NMFS allow federally
> permitted U.S. longline vessels 50 ft and longer
> to fish in portions of the LVPA. Specifically,
> this action allows large U.S. vessels that hold a
> Federal American Samoa longline limited entry
> permit to fish within the LVPA seaward of 12 nm
> around Swains Island, Tutuila, and the Manua
> Islands. NMFS will continue to prohibit fishing
> in the LVPA by large purse seine vessels. The

> fishing requirements for the Rose Atoll Marine
> National Monument also remain unchanged.
>
> This action allows fishing in an additional
> 16,817 nm of Federal waters, allowing large
> longline vessels to distribute fishing effort over
> a larger area. This may reduce catch competition
> among the larger vessels and promote economic
> efficiency by reducing transit costs. This action
> is intended to improve the efficiency and economic
> viability of the American Samoa longline fleet,
> while ensuring that fishing by the longline and
> small vessel fleets remains sustainable on an
> ongoing basis. NMFS will continue to prohibit
> fishing by large longline vessels within the U.S.
> Exclusive Economic Zone (EEZ) from 3-12 nm around
> the islands, thus maintaining non-competitive
> fishing opportunities for the small-vessel
> longline fleet. . . .

Id. (emphasis in original) (footnote omitted). The 2016 LVPA

Rule was effective as of January 29, 2016. Id. Thus, the 2016

LVPA Rule allows permitted Class C and D vessels to fish within

the waters that used to be part of the LVPA under the 2002 rule.

In the Complaint, Plaintiff alleges that NMFS's

position that the conditions giving rise to the 2002 LVPA Rule no

longer exist is mistaken. "Specifically, NMFS determined that

the decrease in local alias meant that potential for gear

conflict and catch conflict is no longer a concern." [Complaint

at ¶ 28.] Plaintiff also alleges that the 2016 LVPA Rule "de-

incentivizes inactive or aspiring local alias that want to enter

the fishery. This new rule will also lead to overcrowding of the

fishery by large vessels." [Id. at ¶ 31.] Further, the rule

allegedly fails to address the importance of the fishery to the

American Samoan culture.  Plaintiff states that the 2016 LVPA

Rule did not cite to any of the comments that referred to

cultural reasons and the Deeds of Cession as grounds to maintain

the 2002 LVPA Rule, including the comments by: the Governor,

Dr. Ruth Matagi Tofiga, the director of the American Samoa

Department of Marine and Wildlife Resources and a member of the

Council; and descendants of the chiefs who signed the Deeds of

Cession.  [Id. at ¶¶ 34-36.]

The 2016 LVPA Rule does state:

Comment 27: Several commenters noted that in the
Deed of Cession with the chiefs of the islands of
Tutuila, Aunuu, and Manua Islands, the United
States promised to protect the lands, preserve the
traditions, customs, language and culture, Samoan
way of life, and the waters surrounding the
islands, and that all the science and
environmental analysis should not supersede the
rights of the people of these islands.

Response: NMFS' decision to approve the Council's
recommendation to modify the LVPA is consistent
with its authority under the Magnuson-Stevens Act
to manage fishery resources in the U.S. EEZ.  This
action relieves an area restriction that applied
to certain large commercial fishing operators
within a portion of the US EEZ (generally 12 to 50
nm from shore), based on NMFS' determination that
the restriction no longer serves the conservation
and management purposes for which it was
developed.  Importantly, this action preserves
full access to these waters by smaller vessels,
including alias, sport fishers, and artisanal
fishing vessels, throughout the EEZ, as authorized
under the existing American Samoa Archipelagic
Fishery Ecosystem Plan and implementing
regulations.  Further, this action does not alter
the authority of American Samoa to manage its
coastal fisheries to the extent authorized under
the Magnuson-Stevens Act, 16 U.S.C. 1856.

> NMFS took particular care to ensure that the views
> of American Samoa stakeholders, including
> fishermen, fishing communities, and the American
> Samoa government, were solicited and taken into
> account throughout the development of this action.
> Consistent with the Magnuson-Stevens Act, the
> Council and NMFS provided a number of
> opportunities for American Samoa's participation
> during all material phases of the development of
> this measure, including Council meetings to
> discuss the amendment, the Coastal Zone Management
> Act (CZMA) process, and public meetings held in
> American Samoa (see response to Comment 1).

81 Fed. Reg. at 5623. Plaintiff asserts that the 2016 LVPA Rule does not address "the rights and guarantees provided in the Deeds of Cession" and whether the rule is consistent with them. [Complaint at ¶ 38.] Plaintiff argues that, by "allow[ing] large longliners to fish within ceded areas that were designated as protected properties," the 2016 LVPA Rule violates the Deeds of Cession because the United States government agreed "to safeguard and respect the property rights of the native people of American Samoa according to their customs and practices, which include cultural fishing practices," and Plaintiff alleges those practices "will be greatly inhibited when the LVPA is reduced from 50 to 12 nautical miles." [Id. at ¶ 45.] Because the rule is not consistent with the applicable law, including the Deeds of Cession, Plaintiff argues that it violates the MSA and is an abuse of discretion under the APA. [Id. at ¶¶ 38, 43.] It further argues that the failure to review and address the Deeds of Cession was the result of the Council's failure to train

Council members regarding applicable laws, as required by the MSA. Plaintiff asserts that the 2016 LVPA Rule was arbitrary, capricious, and an abuse of discretion because the proposed rule was incomplete and the Council was "uninformed." [Id. at ¶ 39.]

## II. **Motion**

In the Motion, Plaintiff seeks summary judgment as to Counts I, II, and III. [Motion at 2.]

The Council has recognized that "[American] Samoa has a long history of dependence on pelagic fishery resources." [AR at H202.[7]] Plaintiff emphasizes that, during the comment period and at Council meetings prior to the adoption of the 2016 LVPA Rule, "dozens of American Samoans objected to the new rule as a violation of the Deeds, including many highly respected American Samoa officials" – such as those mentioned *supra*, and alia fishermen. [Mem. in Supp. of Motion at 6-7 (citing AR E372, E270, E113, E350-65, E85, G2135-36).] In fact, the Council of Treaty Chiefs of Tutuila, Aunu`u and Manu`a and the American Samoa Council of District Governors submitted a joint resolution, dated June 17, 2014 ("Joint Resolution").[8] [AR at E350-65.]

_____

[7] AR at H001-280 is the Council's Measure to limit pelagic longline fishing effort in the Exclusive Economic Zone around American Samoa – Amendment 11 to the Fishery Management Plan for the Pelagic Fisheries of the Western Pacific Region – dated December 1, 2003 ("Amendment 11"). AR at H188-210 is Appendix I to Amendment 11, titled Fishery Impact Statement.

[8] The Joint Resolution was apparently prepared when the
(continued...)

Plaintiff asserts that, despite this, Defendants failed to consider how the rule would affect American Samoa's cultural practices.

Plaintiff argues that the Deeds of Cession are among the applicable laws that a regulation must comply with. Moreover, the deeds are treaties that are binding upon the United States and its agencies, and they have been codified as federal law. Plaintiff urges this Court to conclude that the Deeds of Cession protect American Samoans' cultural fishing rights because the Deeds of Cession protect their rights and customs, even if fishing is not expressly mentioned in the deeds.

Plaintiff argues that Defendants failed to consider the cultural practices of American Samoa's local alia fisherman and the effect that the rule would have on American Samoan culture because their fishing rights would be diminished. Plaintiff emphasizes that the reduction of the LVPA from fifty to twelve nautical miles is significant, and there is no indication that the measure would benefit local fisherman or the cultural practices of American Samoans. Plaintiff states that fishing is an "integral part of the American Samoan culture," and Plaintiff argues that the 2016 LVPA Rule will harm the alia fishermen and American Samoan cultural practices "by allowing large vessels

---

[8](...continued)
Council was considering reducing the size of the LVPA in 2014.

equipped with technically advanced boats and fishing gear, as well as increased manpower, to fish in the same waters as the alia fishermen." [Mem. in Supp. of Motion at 13.] Plaintiff therefore argues that the 2016 LVPA Rule is arbitrary and capricious because it is inconsistent with the federal government's duty to protect the customary practices of American Samoa, as the government agreed to do in the Deeds of Cession.

Plaintiff also argues that the 2016 LVPA Rule violates the MSA because it is a FMP and a regulation, and it was adopted without considering applicable federal law. It is arbitrary and capricious because Defendants failed to consider an important aspect of the problem – *i.e.,* the cultural and customary practices protected in the Deeds of Cession.

As to Count II, Plaintiff asserts that the Deeds of Cession establish a trust relationship between the United States and American Samoa, and therefore the United States has a fiduciary duty to American Samoa. Plaintiff argues that the United States breached its fiduciary duty to American Samoa when Defendants adopted the 2016 LVPA Rule.

## III. **Counter-Motion**[9]

Defendants first argue that all of Plaintiff's claims

---

[9] Defendants argue that Defendant Kitty Simmonds is not a proper party in this case. [Counter-Motion at 14 n.7.] This issue is not properly before this Court because Defendants should have raised it in a motion to dismiss rather than in a footnote within their motion seeking summary judgment.

fail because Plaintiff lacks standing.  Defendants' primary

argument regarding the standing issue is that Plaintiff has not

established that it has suffered any injury in fact because the

Deeds of Cession do not reserve cultural fishing rights in

federal waters because the deeds refer to land and property.

See, e.g., Corp. of Presiding Bishop of Church of Jesus Christ of

Latter-Day Saints v. Hodel, 830 F.2d 374, 386 (D.C. Cir. 1987).

If this Court concludes that Plaintiff has standing,

Defendants argue that the Court should rule in their favor on the

merits of each claim.  Defendants argue that the United States

owns and has sovereign authority over the waters in question

under the paramountcy doctrine and the Territorial Submerged

Lands Act ("TSLA"), 15 U.S.C. §§ 1704-08.  Defendants also assert

that NMFS complied with the requirements of Coastal Zone

Management Act ("CZMA"), 16 U.S.C. §§ 1451-66, in promulgating

the 2016 LVPA Rule.

As to the alleged violations of the MSA, Defendants

argue that the Deeds of Cession do not constitute "any other

applicable law" that NMFS was required to ensure the proposed

rule was consistent with.  Further, even assuming that the Deeds

of Cession do protect American Samoan cultural fishing rights and

that the deeds constituted "any other applicable law" for

purposes of the MSA, Defendants argue that NMFS adequately

considered and responded to the concerns raised about the rule's

impact on American Samoan fishing communities.  Defendants assert

that the 2016 LVPA Rule was ultimately adopted because the 2002

LVPA Rule was no longer necessary or appropriate under the MSA.

> Comment 3: Several commenters said that the large
> longline vessels are all vessels of the United
> States and should have the same right to fish in
> American Samoa waters as the small alia vessels.
>
> Response: NMFS agrees that all federally permitted
> American Samoa longline vessels are vessels of the
> United States.  Furthermore, NMFS believes that
> all fishing sectors should be treated equally,
> unless there is a legitimate conservation and
> management need to treat them differently.  Here,
> NMFS is approving an action that exempts large
> longline vessels from an area that is currently
> restricted to them, but open to other fishing
> vessels, because the conditions that originally
> led to the restriction for the large longline
> vessels no longer exists.  Specifically, NMFS and
> the Council established the LVPA in 2002 to
> separate small longline vessels from large
> longline and purse seine vessels, and reduce the
> potential for gear conflict and catch competition
> between small and large vessels.  At that time,
> the American Samoa longline fishery consisted of
> about 40 small alia (small fishing catamarans less
> than 50 ft long) and 25 large conventional
> mono-hull longline vessels.  However, **since 2006,
> fewer than three alia have been operating on a
> regular basis; and of these, only one was active
> in 2013 and 2014**.
>
> As described in the EA, fewer than 50 other small
> commercial and recreational vessels fish for
> yellowfin and skipjack tunas and billfishes in
> nearshore waters and on offshore banks around
> American Samoa.  Therefore, even accounting for
> the potential for competition with pelagic troll
> and recreational vessels, the conditions that led
> to the establishment of the LVPA in 2002 no longer
> support the full extent (30-50 nm) of the original
> prohibited area for longlining.
>
> . . . .

2016 LVPA Rule, 81 Fed. Reg. at 5260 (emphasis added).  As to the

factual evidence that was the basis for the 2016 LVPA Rule,

Defendants argue that Plaintiff has not shown that NMFS failed to

consider contradictory evidence or failed to articulate a

rational basis for the rule.

Defendants contend that Count II is barred by the

United States' sovereign immunity, and Plaintiff either abandoned

or waived Count IV by failing to move for summary judgment.

## STANDARD

The parties agree that this Court's review of the 2016

LVPA Rule is pursuant to the Magnuson-Stevens Act.  When

reviewing a regulation promulgated pursuant to the Magnuson-

Stevens Act, a district court "shall only set aside any such

regulation or action on a ground specified in section 706(2)(A),

(B), (C), or (D) of" the APA.  16 U.S.C. § 1855(f)(1)(B).  The

APA provides, in relevant part:

> To the extent necessary to decision and when
> presented, the reviewing court shall decide all
> relevant questions of law, interpret
> constitutional and statutory provisions, and
> determine the meaning or applicability of the
> terms of an agency action.  The reviewing court
> shall–
>
> . . . .
>
> (2)  hold unlawful and set aside agency
> action, findings, and conclusions found to
> be–
>
> > (A)  arbitrary, capricious, an abuse of
> > discretion, or otherwise not in

> accordance with law;
>
> (B)  contrary to constitutional right,
> power, privilege, or immunity;
>
> (C)  in excess of statutory
> jurisdiction, authority, or limitations,
> or short of statutory right; [and]
>
> (D)  without observance of procedure
> required by law[.]

5 U.S.C. § 706.  Thus, the Ninth Circuit has stated:

> In reviewing regulations promulgated under the
> [Magnuson-Stevens Act], "our only function is to
> determine whether the Secretary [of Commerce] 'has
> considered the relevant factors and articulated a
> rational connection between the Facts found and
> the choice made.'"  <u>Alliance Against IFQs v.
> Brown</u>, 84 F.3d 343, 345 (9th Cir. 1996) (quoting
> <u>Wash. Crab Producers, Inc. v. Mosbacher</u>, 924 F.2d
> 1438, 1440-41 (9th Cir. 1990)).  "We determine
> only if the Secretary acted in an arbitrary and
> capricious manner in promulgating such
> regulations."  <u>Alliance Against IFQs</u>, 84 F.3d at
> 345.  "Under the APA, we will reverse the agency
> action only if the action is arbitrary,
> capricious, an abuse of discretion, or otherwise
> contrary to law."  <u>Lands Council v. Powell</u>, 379
> F.3d 738, 743 (9th Cir. 2004), *amended by* 395 F.3d
> 1019 (9th Cir. 2005).

<u>Fishermen's Finest, Inc. v. Locke</u>, 593 F.3d 886, 894 (9th Cir.

2010) (some alterations in <u>Fishermen's Finest</u>).  "Even when an

agency explains its decision with 'less than ideal clarity,'" the

Court must uphold the action "if the agency's path may be

reasonably discerned."  <u>San Luis & Delta-Mendota Water Auth. v.

Locke</u>, 776 F.3d 971, 994 (9th Cir. 2014) (citation omitted).

This deference is "at its highest where a court is reviewing an

agency action that required a high level of technical expertise."

Id.

The Ninth Circuit has stated that:

"Review under the arbitrary and capricious
standard is narrow, and we do not substitute our
judgment for that of the agency." Ecology Ctr. v.
Castaneda, 574 F.3d 652, 656 (9th Cir. 2009)
(alterations omitted) (quoting Lands Council v.
McNair (Lands Council II), 537 F.3d 981, 987 (9th
Cir. 2008) (en banc), *overruled on other grounds
by* Winter v. Natural Res. Def. Council, Inc., 555
U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249
(2008)) (internal quotation marks omitted).
"Rather, we will reverse a decision as arbitrary
and capricious only if the agency relied on
factors Congress did not intend it to consider,
entirely failed to consider an important aspect of
the problem, or offered an explanation that runs
counter to the evidence before the agency or is so
implausible that it could not be ascribed to a
difference in view or the product of agency
expertise." Id. (quoting Lands Council II, 537
F.3d at 987) (internal quotation marks omitted).

Cascadia Wildlands v. Bureau of Indian Affairs, 801 F.3d 1105,

1110 (9th Cir. 2015). This showing is a "heavy burden." Managed

Pharmacy Care v. Sebelius, 716 F.3d 1235, 1244 (9th Cir. 2013).

The arbitrary and capricious standard

requires the [agency] to articulate [ ] a rational
connection between the facts found and the choice
made. [We] review the record to ensure that
agency decisions are founded on a reasoned
evaluation of the relevant factors, and may not
rubberstamp . . . administrative decisions that
[are] inconsistent with a statutory mandate or
that frustrate the congressional policy underlying
a statute . . . .

Sierra Club v. U.S. E.P.A., 671 F.3d 955, 961 (9th Cir. 2012)

(some alterations in Sierra Club) (citations and quotation marks

omitted).

24

## DISCUSSION

### I.   Judicial Notice

As noted *supra*, Defendants ask this Court to take judicial notice of the contents of the Convention of 1899 and the Deeds of Cession, and Plaintiff does not oppose the RJN.

A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).  "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Rule 201(b)(2).  The Convention of 1899 and the Deeds of Cession are historical documents that are subject to judicial notice.  See, e.g., United States v. States of Louisiana, et al., 363 U.S. 1, 12–13 (1960) ("Both sides have presented in support of their respective positions a massive array of historical documents, of which we take judicial notice.").  Further, the versions of the documents submitted with the RJN were obtained from the American Samoa Bar Association, which is a source whose accuracy cannot reasonably be questioned regarding the authenticity of these documents. This Court therefore GRANTS Defendants' RJN.

### II.  Standing

At the outset, this Court must address Defendants' argument that Plaintiff lacks standing to pursue the claims in

this case.  The Ninth Circuit has stated that, in order to prove

Article III standing, a plaintiff must establish:

> (1) the existence of an injury-in-fact that is
> concrete and particularized, and actual or
> imminent; (2) the injury is fairly traceable to
> the challenged conduct; and (3) the injury is
> likely to be redressed by a favorable court
> decision.  <u>Salmon Spawning & Recovery Alliance v.
> Gutierrez</u>, 545 F.3d 1220, 1224-25 (9th Cir. 2008)
> (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S.
> 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351
> (1992)).

<u>Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.</u>, 807

F.3d 1031, 1043 (9th Cir. 2015).  As to Plaintiff's claim that it

has *parens patriae* standing:

> A claim of *parens patriae* standing is
> distinct from an allegation of direct injury.  <u>See
> Wyoming v. Oklahoma</u>, 502 U.S. 437, 448-449, 451,
> 112 S. Ct. 789, 117 L. Ed. 2d 1 (1992).  Far from
> being a substitute for Article III injury, *parens
> patriae* actions raise an additional hurdle for a
> state litigant: the articulation of a "quasi-
> sovereign interest" "**apart** from the interests of
> particular private parties."  <u>Alfred L. Snapp &
> Son, Inc. v. Puerto Rico ex rel. Barez</u>, 458 U.S.
> 592, 607, 102 S. Ct. 3260, 73 L. Ed. 2d 995 (1982)
> (emphasis added).  Just as an association suing on
> behalf of its members must show not only that it
> represents the members but that at least one
> satisfies Article III requirements, so too a State
> asserting quasi-sovereign interests as *parens
> patriae* must still show that its citizens satisfy
> Article III.  Focusing on [the plaintiff state]'s
> interests as quasi-sovereign makes the required
> showing here harder, not easier.  The Court, in
> effect, takes what has always been regarded as a
> **necessary** condition for *parens patriae* standing —
> a quasi-sovereign interest — and converts it into
> a **sufficient** showing for purposes of Article III.

<u>Massachusetts v. E.P.A.</u>, 549 U.S. 497, 538 (2007) (emphases in

<u>Massachusetts</u>) (some citations omitted).  A "quasi-sovereign interest" is a "public or governmental interest[] that concern[s] the state as a whole."  <u>Id.</u> at 520 n.17 (citations and quotation marks omitted).

The long-standing cultural significance of fishing in American Samoa is well recognized.  During the rule-making process that led to the adoption of the 2002 LVPA Rule, the Council stated:

> American Samoans are among the last full-blooded Polynesians.  Their dependence on fishing undoubtedly goes back as far as the peopled history of the Samoa islands, about 3,500 years ago.  Many aspects of the culture have changed in contemporary times but Samoans have retained a traditional social system that continues to strongly influence and depend upon the culture of fishing. . . .
>
> Traditional Samoan values still exert a strong influence on when and why people fish, how they distribute their catch and the meaning of fish within the society.  When distributed, fish and other resources move through a complex and culturally embedded exchange system . . . .
>
> . . . .
>
> American Samoa has a long history of harvesting pelagic fish species, especially skipjack and small yellowfin tuna, which has special significance in customary exchanges.  Due to a rapidly growing population and overexploitation of some inshore seafood resources, the American Samoa community is becoming even more dependent on pelagic fish for food, employment and income from fisheries and for perpetuation of *fa`a Samoa* (Samoan cultural heritage and way of life).  Despite increasing commercialization, the small-scale pelagic fishery continues to contributes [sic] strongly to the

27

> cultural identity and social cohesion of American
> Samoa.  The role of pelagic fish in meeting
> cultural obligations is at least as important as
> the contributions made to nutritional or economic
> well-being of island residents.

[AR at F072-73 (citations omitted).[10]]  The cultural exchange
system for food and other resources supports "extended families
and traditional leaders."  [AR at H203.]  Alia fishermen are also
expected to contribute fish for ceremonial purposes.  [Id. at
H204.]  The 2002 LVPA Rule established the LVPA zone "for the
sole use of local *alia* (traditional fishing boat) fishermen and
thereby [made it] available to the indigenous population of
American Samoa to nurture and practice traditional methods of
fishing with canoes, alias and other traditional vessels, an art
that is fast disappearing."  [AR at E271 (page 2 of official
comment on the proposed 2016 LVPA Rule by Lolo M. Moliga,
Governor of American Samoa).]

This Court FINDS that, in light of the long-standing
significance of fishing to the *fa`a Samoa*, Plaintiff has a quasi-
sovereign interest in protecting the American Samoan's cultural
fishing rights to preserve their culture for the benefit of the
American Samoan people as a whole.  This is a separate and

_____

[10] AR at F053-145 is the Council's Prohibition on fishing
for pelagic management unit species within closed areas around
the islands of American Samoa by vessels more than 50 feet in
length – Framework Measure under the Fishery Management Plan for
the Pelagic Fisheries of the Western Pacific Region, dated
November 1, 2000 and revised December 4, 2001.

distinct interest from the interests of individual American Samoans who would arguably have standing to challenge the 2016 LVPA Rule because the rule allegedly impairs their ability to fish for cultural, and other, purposes.

The record includes comments to the proposed 2016 LVPA Rule addressing the effect that the reduction in the size of the LVPA would have on the American Samoan's fishing practices:

> By allowing large fishing vessels to invade the LVPA, the Council's proposed action threatens to rob the people of these islands of the opportunity to nurture and practice their culture, let alone access the natural resources surrounding their islands. The large long liners, with fishing lines extending many miles present a real risk of entanglement with fishing equipment of alia fishermen. These vessels, with larger catching capacity, could easily deplete the fishing stock; and their presence in these waters will likely discourage local fishermen from practicing traditional fishing methods for fear of being run over by the larger long liners.

[AR at E271-72 (the Governor's Official Comment).]

> [T]he influx of any, let alone 23 longline vessels owned by persons who are not beneficiaries of the [Deeds of Cession], will surely undermine the treatied peoples' property interests in the marine waters and resources within the present LVCA-50 [sic], and create unbalanced competition that will further threaten the collapse of the traditional alia fishing community. . . .

[AR at E353 (page 4 of the Joint Resolution).]

In light of this and other similar evidence, this Court FINDS that Plaintiff has demonstrated an injury-in-fact – the loss of the American Samoan cultural fishing practice – that is

fairly traceable to the adoption of the 2016 LVPA Rule.  Further,

this Court FINDS that: the injury is concrete, particularized,

and sufficiently imminent for purposes of Article III standing;

and the imminent injury is likely to be redressed by a decision

in Plaintiff's favor, because invalidating the 2016 LVPA Rule

would reinstate the LVPA established in the 2002 LVPA Rule.

Because this Court has found that Plaintiff has

demonstrated both a quasi-sovereign interest and all three

elements of Article III standing, this Court CONCLUDES that

Plaintiff has *parens patriae* standing to challenge the 2016 LVPA

Rule in the instant case.  This Court DENIES Defendants' Counter-

Motion as to Defendants' request for summary judgment on the

ground that Plaintiff lacks standing.

This Court now turns to the merits of Plaintiff's

claims.

## III. Count I

Count I alleges that the 2016 LVPA Rule is invalid

because NMFS failed to ensure that the rule was consistent with

the Deeds of Cession.

### A.  Paramountcy Doctrine, TSLA, and CZMA

At the outset, this Court acknowledges that Defendants

assert that the United States has authority over the waters at

issue in this case pursuant to the paramountcy doctrine, the

TSLA, and the CZMA.  This Court also recognizes that at least

some American Samoans have taken the position that American Samoa owns those waters. See, e.g., AR at E353 (Joint Resolution page 4) (asserting that the Deeds of Cession were "understood by the original treaty signers, among other things, to include the guaranteed right of continued **ownership** and unhindered access of the treaty protected people **to the vast marine waters ceded** for their exclusive benefit" (emphases added)). However, the dispute over the ownership of the waters is not before this Court in this case. This case addresses only the validity of the 2016 LVPA Rule, which reduced the LVPA established in the 2002 LVPA Rule at approximately fifty nautical miles to twelve nautical miles. The issue before this Court in Count I is whether NMFS violated the MSA by failing to ensure that the adoption of the 2016 LVPA Rule was consistent with the Deeds of Cession. This Court therefore concludes that it does not need to address Defendants' arguments regarding the paramountcy doctrine, the TSLA, and the CZMA.

### B. <u>MSA - 16 U.S.C. § 1854(c)(7)</u>

As previously stated, the MSA requires that any final regulation promulgated "be consistent with the fishery management plan, with the national standards and other provisions of this chapter, and with any other applicable law." 16 U.S.C. § 1854(c)(7). The MSA does not contain a definition of what is considered "any other applicable law," nor is this Court aware of any case law addressing the issue. The NMFS Operational

Guidelines for the Magnuson-Stevens Fishery Conservation and Management Act Fishery Management Process (Sept. 30, 2015), http://www.fisheries.noaa.gov/sfa/laws_policies/operational_guidelines/index.html ("NMFS Operational Guidelines"), states:

> Section 303(a)(1)(C) of the MSA requires federal fishery management plans to be consistent with other applicable laws. NMFS must also review Council-recommended FMPs, amendments, and regulations to determine whether they are consistent with other applicable law. **These other laws impose additional procedural, substantive, and timing requirements on the decision process.** The particular laws that apply to any given action must be assessed on a case-by-case basis. This section provides an overview of the other applicable laws and executive orders that most frequently apply, including but not limited to the:
>
> - Administrative Procedure Act
> - Coastal Zone Management Act
> - Endangered Species Act
> - Executive Orders 12630, 12866, 12898, 13089, 13132, 13158, 13175, 13272
> - Information Quality Act
> - Marine Mammal Protection Act
> - National Environmental Policy Act
> - National Marine Sanctuaries Act
> - Paperwork Reduction Act
> - Regulatory Flexibility Act[.]

NMFS Operational Guidelines, Appendix 2 (Description of the Fishery Management Process) at 9-10 (emphasis added). The Deeds of Cession were accepted, ratified, and confirmed in 48 U.S.C. § 1661. Although they are not among the frequently applied "other applicable law," they are federal law and they constitute "any other applicable law" for purposes of § 1854(c)(7) if they imposed additional procedural or substantive requirements on the

rule-making process that culminated in the 2016 LVPA Rule.[11]

Defendants argue that the Deeds of Cession did not impose additional requirements on the rule-making process at issue in this case because the deeds do not address offshore fishery resources. Defendants assert that the deeds are evidence "Congress' policy of respecting Samoan traditions concerning **land** ownership." Hodel, 830 F.2d at 386 (emphasis added). Although the D.C. Circuit's opinion in Hodel and the underlying district court order, 637 F. Supp. 1398 (D.D.C. 1986), appear to be the only federal cases addressing the Deeds of Cession, these decisions are not binding on this Court. Moreover, Hodel involved a dispute arising from the High Court of American Samoa's decision invalidating a 1953 deed issued when the appellant purchased land in American Samoa. 830 F.2d at 376. Only issues of land ownership were before the D.C. Circuit in that case; the issue of whether the Deeds of Cession preserve more than American Samoan "traditions concerning land ownership" was not before the court. Thus, Hodel does not support Defendants' position that the Deed of Cession only require the United States to preserve American Samoan traditions concerning land ownership.

---

[11] Plaintiff's challenge to the 2016 LVPA Rule does not present timing issues.

The Cession of Tutuila and Aunu`u requires the United States to "respect and protect the individual rights of all people dwelling in Tutuila to their **lands and other property** in said District." [RJN, Attachment at 4, ¶ 2 (emphasis added).] The use of the word "lands" and the word "property" indicates that "property" is not limited to land/real property. Further, paragraph 2 goes on to state that, if the United States government "require[s] **any land or any other thing** for Government uses, the Government may take the same upon payment of a fair consideration for the land, or other thing, to those who may be deprived of their **property** on account of the desire of the Government." [Id. (emphases added).] The use of the word "thing" as distinct from "property" indicates that "property" is not limited to tangible property – such as, for example, a right of access necessary to engage in certain cultural practices.

The Cession of Manu`a Islands expressly recognizes "the rights of the Chiefs in each village and of all people concerning their **property according to their customs**." [Id. at 6 (emphasis added).] The Cession of Manu`a Islands does not include the same references to lands, property, and things, but it is clear from the document as a whole that it is intended to be read together with, and consistently with, the Cession of Tutuila and Aunu`u.[12]

---

[12] The Cession of Manu`a Islands describes *inter alia*, the
(continued...)

This Court therefore concludes that the term "property" in the Cession of Manu`a Islands has the same meaning as the term "property" in the Cession of Tutuila and Aunu`u. Further, reading the deeds together, the "individual rights of all people dwelling in Tutuila to their lands and other property" referred to in the Cession of Tutuila and Aunu`u includes customary uses of the people's property referred to in the Cession of Manu`a Islands.

It is true that the Deeds of Cession do not expressly state that "property" includes offshore fishery resources, nor do the deeds identify fishing as one of the protected customary practices. However, those facts are not dispositive. In Parravano v. Babbitt, the Ninth Circuit addressed the following issue:

---

[12](...continued)
Cession of Tutuila and Aunu`u and states:

> And Whereas, Tuimanu`a and his chiefs, being
> content and satisfied with the justice, fairness,
> and wisdom of the government as hitherto
> administered by the several Commandants of the
> United States Naval Station, Tutuila, and the
> officials appointed to act with the Commandant,
> are desirous of placing the Islands of Manu`a
> hereinafter described under the full and complete
> sovereignty of the United States of America to
> enable said Islands, with Tutuila and Aunuu, to
> become a part of the territory of said United
> States[.]

[RJN, Attachment at 6.]

Under the Magnuson Act, the Secretary of
Commerce may issue emergency regulations to
achieve consistency with the national standards
set forth in the Act and "any other applicable
law." 16 U.S.C. §§ 1853(a)(1)(C), 1854(a)(1)(B).
Indian fishing rights that exist under federal law
may constitute "any other applicable law."
Washington State Charterboat Ass'n v. Baldrige,
702 F.2d 820, 823 (9th Cir. 1983), *cert. denied*,
464 U.S. 1053, 104 S. Ct. 736, 79 L. Ed. 2d 194
(1984) (Northwest Indian treaty fishing rights
constitute "other applicable law" under Magnuson
Act). Therefore, the question before this court
is whether the Hoopa Valley and Yurok Tribes
retain federally reserved fishing rights that
constitute "any other applicable law" within the
meaning of the Magnuson Act. . . .

70 F.3d 539, 544 (9th Cir. 1995). The Ninth Circuit ultimately

held that the tribes did have fishing rights which constituted

"any other applicable law," even though the executive orders

establishing the tribes' reservation did not expressly identify

fishing rights.

[T]he 1876 and 1891 executive orders first created
and then extended a reservation "for Indian
purposes" along the main course of the Klamath
River. Donnelly [v. United States], 228 U.S.
[243,] 253, 33 S. Ct. [449,] 451 [(1913)]. We
have never encountered difficulty in inferring
that the Tribes' traditional salmon fishing was
necessarily included as one of those "purposes."
See United States v. Wilson, 611 F. Supp. 813,
817-18 (N.D. Cal. 1985), *rev'd on other grounds
sub. nom.*, United States v. Eberhardt, 789 F.2d.
1354 (9th Cir. 1986). Our interpretation accords
with the general understanding that hunting and
fishing rights arise by implication when a
reservation is set aside for Indian purposes. See
Menominee Tribe v. United States, 391 U.S. 404,
406, 88 S. Ct. 1705, 1707, 20 L. Ed. 2d 697
(1968); Pacific Coast [Fed'n of Fishermen's Ass'n,
Inc. v. Sec'y of Commerce], 494 F. Supp. [626,]
632 [(N.D. Cal. 1980)]. Thus, we reject

Parravano's novel theory that ambiguity in the phrase "for Indian purposes" should be resolved against the Tribes.

Id. at 545–46. The cited portion of Menominee Tribe stated:

Nothing was said in the 1854 treaty about hunting and fishing rights. Yet we agree with the Court of Claims that the language "to be held as Indian lands are held" includes the right to fish and to hunt. The record shows that the lands covered by the Wolf River Treaty of 1854 were selected precisely because they had an abundance of game. See Menominee Tribe of Indians v. United States, 95 Ct. Cl. 232, 240—241 (1941). The essence of the Treaty of Wolf River was that the Indians were authorized to maintain on the new lands ceded to them as a reservation their way of life which included hunting and fishing.

391 U.S. at 406 (footnotes omitted).

Defendants are correct when they emphasize that American Samoa is a territory, not a Native American tribe, but Plaintiff does not rely on Parravano because Plaintiff is asserting that the federal courts should treat American Samoa – or United States territories in general – in the same manner that they treat Native American tribes. Plaintiff merely relies on Parravano for the proposition that cultural practices can be protected by inference. Like the executive orders that established the reservation in Parravano and the treaty granting the reservation in Menominee Tribe, neither of which expressly referred to the specific traditional practice at issue in the case, the Deeds of Cession preserved the American Samoans' right to use their "property" to continue their customary practices,

37

but the deeds do not specifically identify those customary practices. The American Samoans are an island people and, as previously stated, their history of fishing practices goes back thousands of years, *i.e.* their fishing customs were well-established at the time of cession. Pursuant to <u>Parravano</u>, this Court CONCLUDES that the American Samoans' right to use their "property" to continue their customary fishing practices is reserved by implication in the Deeds of Cession.

Because the Deeds of Cession require the United States to respect the American Samoans' customary fishing practices, this Court CONCLUDES that the deeds imposed additional procedural or substantive requirements on the rule-making process that culminated in the 2016 LVPA Rule. Therefore, the Deeds of Cession constitute "any other applicable law," which the 2016 LVPA Rule must be consistent with pursuant to § 1854(c)(7).

Defendants argue that NMFS did consider the American Samoans' interest in cultural fishing practices prior to adopting the 2016 LVPA Rule. Defendants emphasize that NMFS considered the impact on American Samoan fishing, and both the 2016 LVPA Rule and the 2016 LVPA EA state that NMFS will "annually review[] the effects of the 2016 LVPA Rule on catch rates, small vessel participation, and sustainable fisheries development initiatives." [Counter-Motion at 28 (citing AR at A1, 125-35).] However, the consideration of American Samoan cultural fishing

practices in general is not enough.  This Court has concluded
that the Deeds of Cession require the United States to preserve
American Samoan cultural fishing practices and that the deeds
constitute "any other applicable law" for purposes of the MSA.
Thus, the 2016 LVPA Rule should not have been adopted without a
determination that the proposed rule was consistent with, *inter
alia*, the Deeds of Cession.

Based upon Defendants' positions in this case, it is
clear that NMFS did not consider whether the proposed rule that
eventually became the 2016 LVPA Rule was consistent with the
Deeds of Cession.  Because NMFS failed to consider whether the
proposed rule was consistent with the Deeds of Cession, it
"entirely failed to consider an important aspect of the problem,"
and therefore the adoption of the 2016 LVPA Rule was arbitrary
and capricious.[13]  See Cascadia Wetlands, 801 F.3d at 1110.  This
Court CONCLUDES that the 2016 LVPA Rule is invalid and GRANTS the
Motion as to Plaintiff's request for summary judgment on Count I.
In light of this Court's ruling, this Court DENIES the Counter-
Motion as to Defendants' request for summary judgment on Count I.

---

[13] This Court does not need to address Defendants' argument
that the changed circumstances between 2002 and 2016 warranted
the reduction in the size of the LVPA.  Even accepting
Defendants' characterization of the evidence before the NMFS, it
was still required to consider that evidence in light of the
United States' obligation under the Deeds of Cession to protect
American Samoan cultural fishing practices.

## IV. **Remaining Claims**

Because this Court has ruled in Plaintiff's favor as to Count I and concluded that the 2016 LVPA Rule is invalid, this Court does not need to reach the merits of Counts II, III, and IV, all of which are essentially alternate theories of why the 2016 LVPA Rule is invalid. This Court therefore DISMISSES Counts II, III, and IV as MOOT, and DENIES the remaining portions of Plaintiff's Motion and Defendants' Counter-Motion.[14]

### **CONCLUSION**

On the basis of the foregoing, Plaintiff's Motion for Summary Judgment, filed July 25, 2016, is HEREBY GRANTED IN PART AND DENIED IN PART. Specifically, the Court GRANTS Plaintiff's Motion as to Count I, insofar as this Court ORDERS that the Final rule regarding Pacific Island Pelagic Fisheries; Exemption for Large U.S. Longline Vessels to Fish in Portions of the American Samoa Large Vessel Prohibited Area, 81 Fed. Reg. 5619 (Feb. 3, 2016), be VACATED AND SET ASIDE.

Further, the remaining claims, Counts II, III, and IV, are HEREBY DISMISSED AS MOOT. Plaintiff's Motion is therefore DENIED AS MOOT as to Plaintiff's request for summary judgment on Counts II, III, and IV. Defendants' Counter-Motion for Summary

---

[14] Because this Court has dismissed Count IV as moot, this Court does not need to address Defendants' argument that Plaintiff abandoned or waived Count IV by failing to move for summary judgment on that claim.

Judgment is HEREBY DENIED in its entirety.

      IT IS SO ORDERED.

      DATED AT HONOLULU, HAWAII, March 20, 2017.



      /s/ Leslie E. Kobayashi
      Leslie E. Kobayashi
      United States District Judge

**TERRITORY OF AMERICAN SAMOA VS. NATIONAL MARINE FISHERIES SERVICE, ET AL; CIVIL 16-00095 LEK-KJM; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT**